### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| KIMBERLY MICHELLE PIERCE, as Personal Representative and next of kin to, her father, THOMAS AVERY RAVEN deceased, and as Personal Representative of the Estate of Thomas Avery Raven, | * * * * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CIVIL ACTION |
| KIA MOTORS AMERICA, INC, KIA MOTORS MEXICO, S.A. de C.V., KIA GEORGIA, INC., HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR GROUP, ZF TRW AUTOMOTIVE HOLDINGS CORPORATION, ZF ACTIVE SAFETY and ELECTRONICS US LLC, TAKATA RESTRAINT SYSTEMS, INC., JOYSON SAFETY SYSTEMS, KEY SAFETY SYSTEMS, and ABC, INC., | * * * * * * * * * * * * * | FILE NO. 1:21cv-01814-MLB |
| Defendants. | * | |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

**COME NOW,** Plaintiffs Kimberly Michelle Pierce, as Personal

Representative and next of kin to her father, THOMAS AVERY RAVEN, deceased,

and as Personal Representative of the Estate of Thomas Avery Raven, in the above-

styled action, by and through their attorneys of record, and file Plaintiffs' First

1

Amended Complaint, **pursuant to Rule 15**, against Defendants, KIA MOTORS AMERICA, INC., KIA MOTORS MEXICO, S.A. de C.V., KIA GEORGIA, INC., HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR GROUP, HYUNDAI MOTOR COMPANY, ZF TRW AUTOMOTIVE HOLDINGS CORPORATION, ZF ACTIVE SAFETY and ELECTRONICS US LLC, TAKATA RESTRAINT SYSTEMS, INC., JOYSON SAFETY SYSTEMS, KEY SAFETY SYSTEMS, and ABC, Inc., and allege the following based upon information and belief and show the Court as follows:

## CLAIMS

Plaintiffs, as personal representatives, bring this lawsuit based on the following causes of actions:  Defective Products that were recalled for defective brakes, engine component defects, defective airbags, restraint system defects and failure to warn.  The claims are Products Liability, Strict Liability, Wrongful Death, Negligence, Gross Negligence, Failure to Warn, Breach of Implied Warranties, Property Damage and Punitive Damages.

## INTRODUCTION

This is a personal injury, negligence, products liability, wrongful death, punitive damages lawsuit brought by the decedent Thomas Avery Raven's personal representative and next of kin. This action arises from Defendants' failure to disclose to Plaintiffs' decedent and similarly situated consumers, despite its longstanding

knowledge that millions of Kia and Hyundai vehicles were or would be recalled, that the airbag control unit (ACU) was defective, and upon malfunctioning it created a ripple effect of shutting down the proper operation and functioning of the seat-belt restraint system.  The engine component, safety restraint, and the braking system were defective.  Defendants knew or should have known about these defects before these Kia and Hyundai vehicles were offered for sale.  Defendants failed to correct these dangerous defects or disclose them to their consumers like the decedent and similarly situated consumers.

Moreover, once the vehicles were on the road, Defendants failed to recall and repair these defective vehicles for years, leading to hundreds or thousands of engine failures, sudden stalls, fires, and smoke emanating from the defective engine components.  The defects of the airbag control unit (ACU) and engine component caused the subject 2017 Kia Forte LX to experience catastrophic engine failure, smoke, and the failure of the entire seat-belt system, and airbags system, fasteners needed during a car collision, to malfunction. Specifically, during the subject collision the malfunctioning of the airbag control unit (ACU) caused the decedent's seat-belt restraint system to fail, causing the decedent to experience a frontal impact to his head and chest, hitting the steering wheel several times, and the engine to smoke.  The defect and malfunctioning of the 2017 Kia posed safety risks to the operator/decedent of the 2017 Kia and consumers alike. This catastrophic wreck

caused the decedent longstanding pain and suffering and resulted in a spinal fracture to his neck, that left him a quadriplegic, caused and/or and contributed to Plaintiff Raven's untimely **death six months after this wreck on November 19, 2019**.

The Defendants were well aware of the defective nature of its vehicles and the danger and harm they posed to other drivers of the Hyundai\Kia vehicles and people, who share the road with an increased risk of accident, injury, and/or death. Decedent's experience is by no means an isolated incident.  The internet is replete with examples of news reports blogs or other websites where other substantially similar consumers have complained of the similar defects that the Plaintiff experienced.   The National Highway Traffic Safety Administration (NHTSA) website demonstrates the gravity of the defect. It is now known that car manufactures, in general, and Kia, in particular, closely monitor NHTSA complaints and have strict recall mandates on recalls after a defect claim is made, so there can be no doubt that the Defendants have known of this issue for since 2006 from the NHTSA website.  The Office of Defects Investigation ("ODI") is an office within the NHTSA, which conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the highways. <u>A similar lawsuit is attached hereto as Exhibit.</u>    *In Parks v. Hyundai Motor America, Inc. 258 Ga. App. 876 (2002)*, the Court stated that "it has been recognized that consumer

complaints about a product can create a jury issue as to whether a distributor or seller should have reasonably known of a danger."

## FACTS

### 1.

On May 31, 2017, when the now deceased Thomas Avery Raven and his partner of twelve years, Ms. Cassonya Pugh, purchased their brand-new Kia Forte LX for only $16,074.00, they were so happy and so proud.  It was such a joy filled day.  Decedent Raven and Ms. Pugh could not have known at the time of purchase that this brand-new car that they thought was such a deal was inherently dangerous, catastrophically unsafe, and defective when it entered the stream of commerce and would ultimately be the cause and/or contribute the Thomas Avery Raven's death.

### 2.

Before the subject wreck, of May 1, 2019, the couple would smile when telling the story of how their Kia Forte LX was new when purchased and had almost zero miles on it.

### 3.

On May 1, 2019, at about 9:30 pm, Plaintiff Thomas Avery Raven was traveling alone when he noticed smoke emanating from his Kia into the interior of 2017 Kia Forte LX.  (*See Exhibit #1* - Police Report).  As Mr. Raven attempted to

engage his braking system to stop the Kia Forte LX, the brake system failed.  The car would not stop.  Simultaneously, Mr. Raven's seatbelt failed to restrain him upon impact and even though he repeatedly hit the car in front of him, the **airbags also failed to deploy**.  This vehicle failed to protect decedent Raven.  The safety restraint systems all failed on this Kia Forte LX, and the brake system failed.  The smoke coming into the cab of the car was coming from the Theta II Engine used by almost all Kia and Hyundai vehicles made in the Americas, the United States and Mexico.

**4.**

On December 6, 2020, Car and Driver reported "Kia Recalls 295,000 Cars in U.S. Recalled for Engine-Compartment Fire Risk" (*See Exhibit #7*).

Kia Motors America and the National Highway Traffic Safety Administration (NHTSA) have announced the recall of nearly 295,000 vehicles over a problem that could lead to engine-compartment fires.  NHTSA's recall report states that owners of potentially affected Kia models should be alert for "engine noise, illumination of check-engine light [or] low-oil light, fuel smell, burning smell, oil leaking, smoke." *Id.*

On the date of this horrible wreck, there was an electrical short causing overstress on the engine, the airbag control unit, and all the safety components underlined suddenly malfunctioned.  (There are numerous similar failures reported by other

6

drivers of the Kia and Hyundai vehicles. (***See Exhibit #4*** - Similar Complaints). **Plaintiff Thomas Raven suffered a severe and permanent spinal cord injury (a broken neck) in this wreck that left him a quadriplegic.**

**5.**

On November 19, 2019, Plaintiff Raven died.  He lived six months after the crash.  He sustained life altering injuries from this crash. For six long months, he was unable to breathe on his own, walk, sit up, or take care of himself.  For six long months he suffered in hospitals and nursing homes struggling to breathe.  The Death Certificate of Mr. Raven lists his immediate causes of death as:  a. Cardiopulmonary Arrest; b. Chronic Respiratory Failure; c. Quadriplegia Secondary to Accident [Mr. Raven died in large part due to driving a defective Kia automobile that failed to protect him.]; and d. Congestive Heart Failure.  (***See Exhibit #3***).  Plaintiffs Raven death was directly attributable to the wreck of May 1, 2019.

**6.**

Kia and Hyundai were the manufacturers of the subject vehicle.

Kia Forte LX are manufactured in Mexico.  Kia Motors Mexico, the Defendants and their auto part supplier, ZF TRW Automotive Holding Corp. et al knew of the defects with the airbag control unit (ACU) and the Theta Engine used in all American made vehicles Kias made in Mexico.  Defendants all knew that Kia

and Hyundai pretensioners, seatbelts, air bags, engine components were defective and posed a great risk of injury and/or to occupants.  The ACU detects the severity of a wreck and is responsible for telling the airbags and seatbelt pretensioners to deploy when necessary.  The airbag control unit in these vehicles are susceptible to electrical shorts and overstress during certain **frontal wrecks**. Defendants have long known that if there is an electrical overstress the front airbags and the front seatbelt, will fail to deploy.   The brakes also failed to function.

**7.**

Since as early as 2006, there have been engine component fires and safety system failures, and brake failures associated with Hyundai/Kia vehicles.

## <u>TOLLING AND STATUTES OF LIMITATIONS</u>

Any applicable statutes of limitations have been tolled by Defendants knowing and active concealment and denial of the facts alleged herein.  The decedent could not have reasonably discovered the true, latent defective nature of the defect until after the damage had already been done. Defendants have had an active duty to disclose to the decedent and the public of the poor design, sub-standard materials, or material defects; and that it will require costly repairs, poses a safety concern, and diminish the resale value of the Kia and Hyundai vehicles.  **As a result of the**

**concealment by Defendants, any and all applicable statute of limitations have been tolled.**

## PARTIES

### 8.

### PERSONAL REPRESENTATIVE OF THE DECEDENT

Plaintiff, Kimberly Michelle Pierce (called "Personal Representative"), is next of kin to her father Thomas Avery Raven and Personal Representative of the Estate of Thomas Avery Raven, deceased on November 19, 2019. There is a Probate action pending through the Probate Court of Hall County, Georgia, Estate No. E-21-280 for Letters of Administration.

Plaintiff, Kimberly Michelle Pierce, as Personal Representative, is a resident of the State of Georgia and has been a resident of the State of Georgia at all times relevant to this case. Plaintiffs show that she is entitled to bring this action under Georgia law for the injuries and **wrongful death** of her deceased father, Thomas Avery Raven, and assert all the claims set forth herein in the various capacities set forth above.

### THE DECEDENT

### 9.

Plaintiffs' decedent, Thomas Avery Raven (called "Plaintiffs' decedent"), was, at the time of the occurrence which made the basis of this lawsuit, a resident of

the State of Georgia and resided in Gainesville, Georgia.  At the time of his death on November 19, 2019, Plaintiffs' decedent Thomas Avery Raven was sixty-two (62) years of age.  ***See Exhibit #3 – Death Certificate & Obituary***

At the time of the wreck, on May 1, 2019, Plaintiffs' decedent, Mr. Raven, was the owner and operator of a 2017 Blue Kia Forte LX.  The decedent purchased the new Kia in reliance of advertisements that the vehicle was safe, usable and would operate in accordance with the National Highway Traffic Safety (NHTSA) standards.  However, what the decedent received was a car that was defective according to NHTSA and caused or significantly contributed to his death.



The police report indicates that the decedent's vehicle struck vehicle 1 in the rear multiple times before his Kia Forte LX stopped.  Yet the airbags did not never deploy (See photo above).  Plaintiffs and the decedent suffered great losses as a result of Defendants' omissions and misrepresentations associated with the defects, including, but not limited, loss of life, loss of limb, to out-of-pocket loss, funeral expenses, pain and suffering, and medical specials.

Neither the Defendants nor its agents, informed the decedent of the existence of the known defects or defective vehicle designs, defective, manufacture, or its inherent defects prior to his purchase of the subject vehicle.  <u>Kia/Hyundai did not notify Plaintiff of any recalls of this vehicle before this wreck</u>.  Despite the Defendants having prior knowledge of the defective nature of its vehicle, as early as 2006.  The Defendants continued to produce their potentially dangerous product and put it into the stream of commerce.

## **DEFENDANTS**

### **10.**

Defendant, **Kia Motors America, Inc**. (called "Defendant KMA"), is a foreign profit corporation existing under the laws of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606, and may be served through its ***Registered Agent, The Corporation Company (FL), 106 Colony Park Drive, Suite 800-B, Cumming, Forsyth County, Georgia 30040-2794***.

**11.**

Defendant **Kia Motors Mexico, S.A. de C.V**., is located in Pesqueria, NUEVO LEON, Mexico and is part of the Automobile Manufacturing Industry. Kia Motors Mexico, S.A. de C.V. has 7,437 total employees across all its locations and generates $7.29 billion (USD) in sales. There are 843 companies in the Kia Motors Mexico, S.A. de C.V. corporate family. Defendant Kia Motors Mexico, S.A. de C.V. may be served through its ***President, Jong Kun Lee at Kia Motors Mexico, S.A. de C.V., Blvd. Kia No. 777 S/C Pesqueria, NUEVO LEON, 66650 Mexico***.

**12.**

Defendant, **Kia Georgia, Inc**. (called "Defendant Kia Georgia"), is a foreign profit corporation existing under the laws of Delaware with its principal place of business at 7777 Kia Parkway, Attn: Tax, Dept/Finance, West Point, Troup County, Georgia 31833, and may be served through its ***Registered Agent, The Corporation Company (FL), 106 Colony Park Drive, Suite 800-B, Cumming, Forsyth County, Georgia 30040-2794***.

**13.**

Defendant, **Hyundai Motor America, Inc.** (called "Defendant HMA"), is a foreign profit corporation existing under the laws of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708, and

may be served through its ***Registered Agent, National Registered Agents, Inc.,***

***289 South Culver Street, Lawrenceville, Fulton County, Georgia 30046-4805***.

## 14.

Defendant **Hyundai Motor Group**, (called "Defendant HMG"), is a South Korean multinational conglomerate headquartered in Seoul, South Korea, and is the largest car manufacturer in the country.  The group was formed through the purchase of 51% of South Korea's second largest car company, Kia Motors, by Hyundai Motor Company in 1998.  As of December 31, 203, Hyundai owns 33.88% of Kia Motors.  The Hyundai Kia Automotive Group also refers to the group of affiliated companies interconnected by complex shareholding arrangements, with Hyundai Motor Company regarded as the de facto representative of the group.

Defendant Hyundai Motor Group may be served through its ***Legal Department, 12, Heolleung-ro, Seocho-gu, Seoul, Korea.***

## 15.

Defendant **Hyundai Motor Company,** (called "Defendant HMC"), and previously mis-named as Hyundai Motor Corporation (misnomer) in the original Complaint.  Hyundai Motor Company is the parent company of Kia.

Hyundai Motor Company is South Korea's second-largest automobile manufacturer after parent company Hyundai Motor Company, with sales of over 2.8

million vehicles in 2019.  As of December 2015, the Kia Corporation is minority owned by Hyundai, which holds a 33.88% stake valued at just over US$6 billion. Hyundai Motor Company is a Korean corporation with headquarters in Seoul, South Korea, with a principal place of business at 231 Yangjae, Seocho-gu, Seoul, South Korea 137-938, and may be served through its *Legal Department, 12, Heolleung-ro, Seocho-gu, Seoul, Korea.*

## 16.

Defendant **ZF TRW Automotive Holdings Corporation**, ACU Component Supplier, the airbags (called "Defendant ZF TRW"), is in Livonia, Michigan and is part of the Automotive Parts Manufacturing Industry.  ZF TRW Automotive Holdings Corporation has 68,037 total employees across all its locations and generates $26.29 billion in sales (USD).  There are 897 companies in the ZF TRW Automotive Holdings Corporation corporate family.  *ZF TRW may be served through its Chief Financial Officer, Gerald Dekker, 12001 Tech Center Drive, Livonia, MI 48150.*

## 17.

Defendant, **ZF Active Safety and Electronics US LLC,** (called "Defendant ZF"), is a foreign profit corporation organized and existing under the laws of Delaware with its principal place of business at 12001 Tech Center Drive., Livonia, Michigan 48150.  ZF is the manufacturer of the airbag control unit (ACU) in the

vehicle model Kia, which detects the severity of a crash, then tells airbags and seatbelt pretensioners to deploy when necessary.  The ACU in the recalled vehicles (including, but not limited to the subject vehicle, Kia Forte LX) may be susceptible to electrical overstress during certain front crashes.  If that happens (which it did in this wreck), the front airbags and front seatbelt pretensioners fail to deploy as needed, increasing the risk of severe injury or death to occupants.

Defendant ZF may be served through its ***Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092***.

**18.**

Defendant **Takata Restraint Systems** (called "Defendant Takata Restraint Systems") is a foreign profit corporation organized and existing under the laws of Delaware with its principal place of business at 629 Green Valley Road, Greensboro, North Carolina 27408.  Takata Restraint Systems, Inc. may be served through its ***Registered Agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.***

**19.**

Defendant **Joyson Safety Systems** (called "Defendant Joyson"), formerly known as Key Safety Systems (KSS), is an American company that develops and manufactures automotive safety systems.  The company is a result of the merger

between KSS and Takata Corporation after KSS acquired Takata.  It is owned jointly by Joyson Group (China) and PAG capital (Hong Kong).  JSS is a foreign profit corporation organized and existing under the laws of Delaware with its principal place of business at 2025 Harmon Road, Auburn Hills, Michigan 48326 and may be served through its ***President/CEO, Guido Durrer at 2025 Harmon Road, Auburn Hills, Michigan 48326***.

**20.**

Defendant **Key Safety Systems** (called "Defendant KSS"), is a global leader in the design, development and manufacturing of automotive safety-critical components and systems including airbags, seatbelts, and steering wheels.  Their products are featured in more than 300 vehicle models produced by over 60 well-diversified customers worldwide.  KSS is a foreign profit corporation organized and existing under the laws of Delaware with its principal place of business at 2025 Harmon Road, Auburn Hills, Michigan 48326 and may be served through its ***President/CEO, Guido Durrer at 2025 Harmon Road, Auburn Hills, Michigan 48326***.

**21.**

Defendant, **A and B and C, Inc**. (called "Defendant ABC, Inc."), are unknown corporations that design, manufacture, supply defective parts, assemble, test, market, promote, advertise, distribute, and sell the subject vehicle at issue in

this lawsuit and described as a 2017 Blue Kia Forte LX (VIN # 3KPFK4A70HE142424) and are subject to the jurisdiction and venue of this Court and liable to Plaintiff for the allegations contained herein.  These defendants will be named and served with Summons and Complaint once they are known.

## NATURE OF THE ACTION

### 22.

This is a civil action arising out of catastrophic bodily injuries/death and damage of property sustained by Plaintiffs' decedent, Thomas Avery Raven, who died, on November 19, 2019, because of catastrophic injuries he suffered in the subject wreck.  On May 1, 2019, Plaintiff's decedent, Mr. Raven was the owner and operator of a 2017 Blue Kia Forte LX (VIN: 3KPFK4A70HE142424) traveling northward on Interstate 985 inside of Hall County, Georgia.  Plaintiff was driving safely when he saw smoke in the cabin of his Kia Forte LX.  All the safety restraints in the car failed.

On this May 1, 2019, Plaintiffs' decedent, Mr. Raven was traveling North on Interstate 985 in the left lane behind Sabja Ali Khimani's vehicle (non-party). Before the wreck, Mr. Raven saw smoke coming into the cab of his 2017 Kia Forte LX.  As Mr. Khimani was slowing for traffic ahead, Mr. Raven began to apply his brake, but they failed to engage and Mr. Raven's vehicle slammed into the rear of

Mr. Sabja Ali Khimani's vehicle <u>multiple times</u> while the front tires continued to spin, catch on fire, and disintegrated.

**See Exhibit #1 – Accident Report dated May 1, 2019, by Officer J. James (Badge # 0172) c/o Georgia State Patrol -Post #6.**

**23.**

Plaintiff, Kimberly Michelle Pierce, is the Personal Representative and next of kin to her father, Thomas Avery Raven, deceased and as Personal Representative of the Estate of Thomas Avery Raven, and has brought this action by Plaintiffs for the purpose of recovering damages.  Defendants are being sued for their defective product, wrongful death, strict liability, negligence, and damages sustained as the result of Plaintiffs' decedent Raven's catastrophic bodily injuries, including his spinal cord injury that left him a quadriplegic and his untimely death, all as a result of the negligent acts of the mis presentation and inactions of the Defendants. Defendants failed to provide a vehicle that was safe and non-defective at the time of the wreck.

**24.**

This wrongful death action includes, but is not limited to claims for general negligence, gross negligence, reckless conduct, breach of warranty and strict liability, fraudulent concealment, and punitive damages.

**25**.

The Product Liability Defendants (as defined above) are liable to Plaintiffs for their individual and collective acts, omissions, and involvement in developing, testing, evaluating, manufacturing, distributing, advertising, conspiring to promote, monitoring and/or selling a defective vehicle and having knowledge of said defective product.

The Defendants collectively, had knowledge of the unreasonable risks of the defective vehicle. The claims asserted herein arise out of the design, manufacturing, assembly, supplying, equipping, marketing, distribution, and sale of a defective, and unreasonably dangerous automobile.  On November 27, 2020, Hyundai and Kia were fined $137 million for delaying US Engine failure recalls.  *See Exhibit #8*.

Kia has admitted that the engine compartment fires were a result of an electrical short in the airbag control unit.

**26.**

On October 15, 2019, Hyundai and Kia set aside $758 million to settle a class action lawsuit for engine failures and fires, there were 10 separate class action lawsuits.  Kia and Hyundai were also the subject of a safety governmental probe for failure to timely recall millions of vehicles.   Both companies have been the focus of federal investigations related to the speed and scope of related recalls. The companies must install now software to monitor for engine failure, provide lifetime

engine warranties, and will include monetary compensation for past engine repairs and loss of value.

## JURISDICTION AND VENUE

### 27.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  Federal diversity jurisdiction exists.   Plaintiffs are residents of Georgia and Defendants are corporations with one of the Defendants' principal place of business located in Michigan.   Therefore, complete diversity of citizenship exists.   The amount in controversy, exclusive of interest and costs, exceed the sum or value of $75,000. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### 28.

Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims asserted herein occurred in this District and the subject contract was executed in the district.  Additionally, Defendants have placed a product in the stream of commerce in this district and have received substantial revenue and profits from the sales and leasing of said vehicles in this District.

## BACKGROUND

### 29.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 28 above as if fully restated.

### 30.

Plaintiffs, as Personal Representatives, bring this action and sues for the following:

(a) Special damages for all medical, funeral, and other necessary expenses incurred by or on behalf of decedent Thomas Avery Raven due to his injuries and resulting death, on November 19, 2019, all of which proximately caused by the acts and omissions of defendants as set forth herein.

(b) Compensatory damages for the conscious pain and suffering and severe emotional distress of Plaintiffs' decedent, Thomas Avery Raven, which resulted from the occurrence made the basis of this lawsuit, and which was proximately caused by the acts and omissions of Defendants as set forth herein.

(c) Fraud (full value of decedents' life)– failure to disclose, concealed the defects and did not warn the decedent of the hazardous and defective condition of the vehicle at issue.

(d) Punitive damages brought in connection with the injuries, damages, and conscious pain and suffering incurred by Plaintiffs' decedent, Thomas Avery Raven.

## <u>COUNT ONE</u>
### <u>Negligence, Gross Negligence, Willful and Wanton Conduct:</u>
### <u>Design Defect as to Defendants</u>

### 31.

Plaintiffs, as Personal Representatives, re-allege and incorporate herein the allegations contained in paragraphs 1 through 30 above as if fully restated.

### 32.

At all times relevant herein, Defendants designed, selected, inspected, tested, assembled, equipped, marketed, distributed, supplied and/or sold vehicle and its components, including the subject vehicle, Kia Forte LX.

### 33.

At all times relevant to this action, the Defendants were responsible for the design, selection, inspection, testing manufacture, assembly, equipping, marketing, distribution, and sale of a defective, and unreasonably dangerous automobile, *including defective engines, defective electrical systems, defective airbags systems, defective autonomous emergency braking systems (AEB), and forward collision warning (FCW) systems. All of which was reported and documented to the NHTSA regarding the 2017 Kia Fort LX, the subject vehicle in this action.*

Plaintiffs' decedent suffered injury and wrongful death and Plaintiffs have incurred damages as a direct and proximate result of the design defects existing in the Blue 2017 Kia Forte LX causing the Manufacturer Defendants, distributors, and suppliers to be liable to Plaintiffs due to the defective nature of the subject vehicle.

**COUNT TWO**
**Negligence, Gross Negligence, Willful and Wanton Conduct:**
**Design and Manufacturing Defects as To Defendants**

**34.**

Plaintiffs, as Personal Representatives, re-allege and incorporate herein the allegations contained in paragraphs 1 through 33 above as if fully restated.

**35.**

At all times relevant herein, Defendants, took part in and/or were responsible for the manufacture, selection, inspection, testing, design, assemble, equipment, marketing, distribution, supplied parts and/or sale of the vehicle and its component parts, including but not limited to its defective airbag system.

**36.**

Defendants manufactured installed, distributed, the vehicle and its airbag system, and the (ACU) airbag components unit each Defendant owed Plaintiffs a duty of reasonable care to manufacture, select, inspect, test, assemble, equip, market, distribute, and sell the vehicle and its components, including the airbag system, so

that it would provide a reasonable degree of occupant protection and safety, especially during normal routine driving.

**37.**

At all times relevant herein, as manufactured, selected, inspected, tested, assembled, equipped, marketed, distributed, ZF and/or supplied defective ACU components and/or sold by Defendants Hyundai and Kia, the vehicle (Kia Forte LX) is and was defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its airbag system was inadequately designed and constructed, and failed to provide the degree of occupant protection and safety.

**38.**

At all times relevant herein, Defendants each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and careless and breached their duties of care owed to Plaintiffs by:

    a. Failing to adopt and implement adequate safety procedures and policies.

    b. Failing to manufacture, test, assemble and/or install the airbag system so as to prevent it from spontaneously deploying with excessive force to injure drivers and passengers upon air bag deployment.

    c. Failing to exercise reasonable care in the manufacturer of the subject vehicle and its airbag system.

d.  Failing to exercise reasonable care in the testing of the subject vehicle and its airbag system.

e.  Failing to exercise reasonable care in the inspection of the subject vehicle and its airbag system.

f.  Failing to adopt and implement adequate warnings regarding subject vehicle and its airbag system.

g.  Failing to incorporate appropriate quality assurance procedures in design of the subject vehicle's airbag system.

h.  Failure to timely institute recalls within five days of knowledge of defect: and

i.  On such other and further particulars as the evidence may show.

**39.**

By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages sustained as a direct and proximate result of Defendants' negligent and grossly negligent acts or omissions.

**COUNT THREE**
**Strict Liability In Tort Negligence – O.C.G.A. § 51-11-11.1**

**40.**

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 39 above as if fully restated.

**41.**

At all times relevant herein, there was in full force and effect certain statutes of the State of Georgia pertaining to Sellers of Defective Products as set forth in O.C.G.A. §51-1-11.1.

**42.**

Pursuant to O.C.G.A. §51-1-11.1, Defendants are strictly liable for designing, testing, manufacturing, distributing, selling, supplying, and/or placing a defective and unreasonably dangerous product into the stream of commerce.

**43.**

At all times relevant herein, the subject vehicle and its seatbelt, airbag system and engine were defective and unreasonably dangerous as to its design, manufacture, distribution, and warnings, causing the vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

**44.**

At all times relevant herein, Defendants took some part in the manufacture and sale of the subject vehicle and its airbag system, defective engine component and defective braking system prior to the wreck on May 1, 2019.

**45.**

At all times relevant, the subject vehicle was being used in an intended and/or foreseeable manner when the wreck alleged herein occurred.  Mr. Raven neither

misused nor materially altered the subject vehicle, and upon information and belief, the subject vehicle was in the same or substantially similar condition that it was in at the time of purchase.

**46.**

At all times relevant herein, the subject vehicle is and was unreasonably dangerous and defective because it was designed, manufactured, and/or sold with a defective seatbelt, airbag system, defective braking system, and engine which had an electrical short causing smoke in engine department and short circuit all safety systems.  Plaintiffs' decedent broke his neck and as a proximate result died.

**47.**

At all times relevant herein, Defendants were aware of feasible alternative designs which would have minimized or eliminated altogether the risk of injury posed by the vehicle and its airbag system.

**48.**

At all times relevant herein, Defendants had a duty to warn users of the dangers associated with the subject vehicle and its airbag system.

**49.**

At all times relevant herein, Defendants failed to warn of the inherent and latent defects that made this product dangerous and unsafe for its intended use.

**50.**

At all times relevant herein, Defendants failed to design, test, manufacture, inspect, and/or sell a product that was safe for its intended use.

**51.**

As a direct and proximate result of the Defendants negligence and the breaches complained herein, Plaintiffs' decedent suffered serious and permanent injuries including a broken neck, paraplegic, and death. Plaintiffs' decedent survived this wreck for a short period of time incurring excruciating pain and suffering, paraplegic in need of twenty-four-hour care, mental anguish, and extreme emotional distress, from the wreck on May 1, 2019, and his ultimately death six months after this crash that was attributable to the defendants' action and/or in actions.

**52.**

*Wherefore*, Plaintiff's demand judgment against Defendants for wrongful death, all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FOUR
## Failure To Warn As To Defendants

### 53.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 52 above as if fully restated.

### 54.

At all times relevant herein, Defendants, as manufacturers, suppliers of parts and distributers of subject vehicle and its safety restraints, engine components system, and braking systems owed duties to warn of foreseeable dangerous conditions of the subject vehicle which would impair its safety.

### 55.

At all times relevant herein, Defendants knew or should have known that the subject vehicle, its safety restraint system, its airbag system, braking system, and its engine components were defective, particularly in a frontal crash.

### 56.

At all times relevant herein, Defendants had no reason to believe that users would realize this potential danger.

### 57.

At all times relevant herein, Defendants affirmatively failed to exercise reasonable care to inform users of the vehicle's dangerous condition created by the

defective airbag system, defective safety restraint system, engine component systems and defective braking systems.

**58.**

As a direct and proximate result of Defendants' failure to warn of the dangers posed by the defective airbag system in the subject vehicle and the breaches complained herein, Plaintiffs' decedent suffered injuries including excruciating pain and suffering, inability to breathe on his own, care for his personal needs, mental anguish, and emotional distress, from the wreck of May 1, 2019.

**59.**

By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages sustained as a direct and proximate result of Defendants' negligent and grossly negligent acts or omissions.

**60.**

***Wherefore***, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT FIVE
## Breach of Implied Warranties As To Defendants

### 61.

Plaintiffs re-allege and incorporates herein the allegations contained in paragraphs 1 through 60 above as if fully restated.

### 62.

At all times relevant herein, Defendants were/are "merchants" as to the subject vehicle within the meaning O.C.G.A. § 11-2-104.

### 63.

At all times relevant herein, Defendants manufactured and sold the subject vehicle component which is a "good" within the meaning of these statutory provisions. Consequently, pursuant to O.C.G.A. § 11-2-314, at the time of sale, the Hyundai/Kia duo impliedly warranted that the subject vehicle was merchantable, including that it was fit for its ordinary purposes as safe passenger vehicles that it could pass without objection in the trade, and that it was adequately contained, packaged, and labeled.

### 64.

At all times relevant herein, Defendants Hyundai/Kia breached the implied warranty of merchantability as it concerns Plaintiff because the subject vehicle was not fit for the ordinary purposes for which it was anticipated to be used, namely as a safe passenger motor vehicle.

31

**65.**

Specially, the subject vehicle's seatbelt system, airbag system and engine were unreasonably dangerous and defective because they were designed, manufactured, and sold defected and therefore, would not pass without objection in the trade.

**66.**

At all times relevant herein, Defendants further breached the implied warranty of merchantability to Plaintiffs because the subject vehicle was not adequately contained, packaged, and labeled in that the directions and warnings that accompanied the subject vehicle did not adequately warn its owner in light of the defective airbag system which might and could explode spontaneously.

**67.**

As a proximate result of the Defendants breach of the implied warranty of merchantability, Plaintiffs' decedent suffered serious and permanent injuries including scarring, excruciating pain and suffering, mental anguish, and emotional distress, from the wreck of May 1, 2019.  By Defendants' conduct as described herein, including knowledge of the defects inherent in the vehicles and Defendants' actions, and inaction, in the face of the knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

**68.**

By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages proximately caused by Defendant Hyundai's breaches of the implied warranty of merchantability arising and resulting from the wreck of May 1, 2019.

**69.**

*Wherefore*, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT SIX
## STRICT LIABILITY /DUTY TO WARN/FAILURE TO INSPECT

**70.**

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 69 above as if fully restated.

**71.**

Under O.C.G.A. §51-1-11 and other applicable case law, Defendants are strictly liable to Plaintiffs for failing to warn occupiers, such as Plaintiffs' decedent, of its defective airbag AUC and engine in subject vehicle.  Defendants' breach of

the statutorily imposed warranty, whether express or implied, gives rise to strict liability.

**72.**

At all times relevant herein, the subject vehicle and its airbag system was defective and unreasonably dangerous as to its design, manufacture, distribution, and warnings, causing the vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

**73.**

At all times relevant herein, all Defendants took some part in the manufacture, sale and distribution of the subject vehicle and its defective airbag system.  At all times, the subject vehicle, that Plaintiff occupied, was defective and unsafe.  The defects caused serious injuries to Plaintiff in an intended and foreseeable manner.

**74.**

At all times, relevant, the subject vehicle was being used in an intended and/or foreseeable manner when the incident alleged herein occurred.  Plaintiffs' decedent neither misused nor materially altered the subject vehicle.

**75.**

At all times relevant herein, the subject vehicle is and was unreasonably dangerous and defective because of it design.

**76.**

At all times relevant herein, Defendants had a duty to warn users and Plaintiffs' decedent of the dangers associated with the vehicle and its defective airbag system, seatbelt, engines, and braking system. Defendants failed to exercise reasonable care to inform users, such as Plaintiffs' decedent, of the failure of the safety system.

**77.**

At all times relevant herein, Defendants failed to inspect the car before it was sold for use in an intended and foreseeable manner.

**78.**

As a direct and proximate result of the Defendants negligence, failures, omissions, and breaches complained of herein, Plaintiffs' decedent suffered severe injuries and death.

**79.**

As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, the Plaintiffs' decedent sustained injuries and damages in an amount to be determined at trial.

## COUNT SEVEN
## ZF TRW and ZF ACTIVE
## STRICT LIABILITY

### 80.

Plaintiffs re-allege and incorporates herein the allegations contained in paragraphs 1 through 79 above as if fully restated.

### 81.

The Defendants including ZF-TRW and ZF Defendants designed, selected, manufactured, distributed, assembled, equipped, marketed and or sold the defective airbag control units ("ACUs"), which is part of the airbag systems equipped in vehicles such as the one Plaintiff's Decedent was driving on the date of incident. Plaintiff's Decedent contained defendant ACU component's defective airbags, seatbelts, engines, and brakes which did not properly function during Decedent's collision, resulting in an utter failure of the safety system in the subject Kia.

### 82.

ZF and ZF-TRW Defendants manufactured and equipped the Kia Forte with a defective ACU component without disclosing the known ACU Defect, which places drivers and occupants of the vehicles at risk for serious injury or death. The airbag systems in the vehicle contained ACUs that sense vehicle crashes and evaluate whether deployment of airbags and other safety restraints is necessary in the event of an impact. The ACUs contain an electronic component—an application

36

specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Defective Class Vehicles. The ACUs are intended to have electrical wiring and circuitry that prevent the transmission of harmful signals that may damage the ASIC. However, the ACUs in the Decedent's vehicles did not contain sufficient ASIC protection and experienced electrical overstress ("EOS"), which lead to safety system failure. EOS causes the ACUs to stop working without any warning to drivers or occupants of the vehicles, resulting in failure of the airbags and other safety restraints to deploy when needed, subjecting consumers and people like Plaintiff's Decedent to injury and death.

In March 2018, the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation ("PE") investigation into the ACU Defect based on six frontal crashes where airbags did not deploy, reported via Early Warning Reporting between 2012 and 2017. These crashes resulted in six injuries and four deaths. ZF-TRW was identified as the supplier of the defective ACUs and the Case MDL No. 2905 Document 1-1 Filed 06/05/19 Page 8 of 21 7 investigation focused on certain Hyundai America and Kia America vehicles containing the ACU Defect. Hyundai and Kia also conducted recalls as a result of the NHTSA investigation and communicated with the ZF-TRW Defendants and NHTSA regarding the ACU Defect. Although the ZF and ZF-TRW Defendants and Vehicle Manufacturer

Defendants have long known of the ACU Defect and associated safety risks, they failed to act within a reasonable time to stop the sale of defective ACUs and/or the sale and lease of Vehicles that contain the defective ACU.

Kia/Hyundai/ACU is unreasonably and dangerously defective in its design, manufacture, and as marketed in the following particulars:

a) Defendants, including ZF and ZF-TRW, failed to adequately warn the Decedent, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle so that individuals like Decedent Raven could make informed and prudent decisions regarding traveling or riding in such vehicles; and

b) Defendants, including ZF and ZF-TRW, failed to implement safe, technologically feasible, and economically practical design alternatives which would have mitigated or cured the design defects noted above. The defective nature of the ACU unit was the proximate cause of the injuries and damages sustained by Plaintiff's Decedent, as set forth herein, thus rendering Defendants strictly liable.

**83.**

By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages sustained as a direct and proximate result of Defendants' negligent and grossly negligent acts or omissions.

## (ABC DEFENDANT LIABILITY)

### 84.

Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 83 above as if fully restated.

### 85.

The ABC Defendants listed in this Complaint, whose identities at this time are unknown, are also liable to Plaintiffs' decedent for his wrongful death, in strict liability, negligence, breach of expressed and implied warranty, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, as well as those other actions pled in this Complaint.

### 86.

As a direct and proximate result of the aforementioned illegal and tortious acts, Plaintiffs' decedent was injured and suffered damages including, but not limited to: severe and permanent physical injuries and wrongful death; physical pain and suffering; mental pain and suffering; impairment; disability; disfigurement; mental anguish; loss of capacity for the enjoyment of life; time in life that could have been spent doing things other than going to doctors; physically suffering, and undergoing medical monitoring; lost earnings and lost earn capacity; expense of hospitalization, medical and nursing care and treatment and medical monitoring; fear

and mental anguish concerning future medical problems including but not limited to those associated with his death; and as otherwise set forth under this Complaint.

## COUNT EIGHT
## DAMAGES

**87.**

Plaintiffs, as Personal Representatives, re-allege and incorporate herein the allegations contained in paragraphs 1 through 86 above as if fully restated.

**88.**

As a result of Defendants' negligence, Plaintiffs' decedent, Thomas Avery Raven, suffered catastrophic and fatal injuries.   As a result of Defendants' negligence, Plaintiffs' decedent, Thomas Avery Raven sustained the following injuries: broken neck, spinal cord injury at C-5, and paralyzed from the neck down, and death.

Special Damages

Compensatory Damages

Full Value of his life

## COUNT NINE
## FRAUDULENT CONCEALMENT

**89.**

Plaintiffs re-allege and incorporates herein the allegations contained in paragraphs 1 through 88 above as if fully restated.

**90.**

All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein. Defendants concealed the defects, minimized the cause, effects, and dangers of the defects, and failed to disclose or remedy the defects.  Defects existed in certain Hyundai and Kia vehicle that could lead to sudden engine failure and that the manufacturers knew of but chose to conceal the defects nature could pose a risk of crash, vehicle damage and or death.

**91.**

Kia and all the Defendants knew of the recalls since '2012 but chose to not remedy the defects in its automobile. NHTSA said in investigation documents that Hyundai limited the recall to engines made before April 2012, saying it solved the manufacturing problem after that.  Defendants DID NOT.  In addition, Kia did not recall its cars and SUVs with the same 2.4 litter and 2 liter "Theta II" engines, contending they were made on a different assembly line at a plant in Alabama/West Point, Georgia.

**92.**

18 months after the 2015 recall, both automakers Kia and Hyundai announced recalls 1.2 million more vehicles for the same problem, including models the automaker originally said were not affected, according to NHTSA when it opened

the investigation. Engine failure and fire problem with Hyundais and Kias have plagued the companies for more than five years, affecting the owners of more than 8 million vehicles. Data collected by the Center for Auto Safety show 31 U.S. fire and engine related recalls from Hyundai and Kia since 2015. The recalls involve more than 20 models from the 2006 through 2021 model years totaling over 8.4 million vehicles.

**93.**

The Defendants intentionally concealed, suppressed, and failed to disclose the material facts that the vehicle at issue had design and manufacturing defects that could result in sudden and catastrophic restraint failure, engine stalling, brake failure, and smoke. Defendants knew or should have known the true facts, due to their involvement in the design, installation, calibration, manufacture, durability testing, and warranty service of said vehicle. And yet, at no time, did any of these Defendants reveal the truth to Plaintiffs' decedent. By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages proximately caused by Defendants' fraudulent concealment and untimely recall measures.

## COUNT TEN
## DEFENDANTS TAKATA AND JOYSON SAFETY SYSTEM

**94.**

Plaintiffs re-allege and incorporates herein the allegations contained in paragraphs 1 through 93 above as if fully restated.

**95.**

The entire safety restraint system failed in this crash on May 1, 2019.  The infamous Takata seatbelts failed to lock and restrain.  The airbags failed to deploy.  Almost all of Takata entities are now in bankruptcy, based in large part because of the lawsuits filed or pending against the Takata entities.

## COUNT ELEVEN
## PUNITIVE DAMAGES

**96.**

Plaintiffs, as Personal Representatives, re-allege and incorporates herein the allegations contained in paragraphs 1 through 95 above as if fully restated.

**97.**

The conduct of each Product Liability Defendant, as set forth hereinabove, was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that each Product Liability Defendant acted only out of self-interest and personal gain.   Defendants engaged in a cost benefit analysis.  Such

conduct evidences a specific intent to cause harm to Plaintiffs' decedent as provided under O.C.G.A. § 51-12-5.1.

**98.**

There had been almost countless complaints regarding the defective Kia and Hyundai vehicles, in which the Defendants failed to correct.  Accordingly, punitive damages should be imposed against each Product Liability Defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each such Defendant from repeating or continuing such unlawful conduct.

**99.**

*Hyundai and Kia were fined $137 million dollars according to Associated Press Article written by Tom Krisher on November 27, 2020.  "It's critical that manufacturers appropriately recognize the urgency of their safety recall responsibilities and provide timely and candid information to the agency about all safety issues, "NHTSA Deputy Administrator James Owens said in a statement.*

**100**.

*The U.S. safety agency (NHTSA) opened its probe in 2017 after Hyundai recalled about 470,000 vehicles in September of 2015 because debris from manufacturing could restrict oil flow to connecting rod bearings.  That could make the bearings wear out and fail, potentially causing the four-cylinder engines to stall or catch fire.  The repair was an expensive engine block replacement.*

**101.**

*NHTSA said in investigation documents that Hyundai limited the recall to engines made before April of 2012, saying it solved the manufacturing problem after that.  In addition, Kia did not recall its cars and SUVs with the same 2.4 liter and 2-liter "Theta II" engines, contending they were made on a different assembly line at a plant in Alabama.  But 18 months after the 2015 recall, both automakers announced recall of 1.2 million more vehicles for the same problem, including models the automakers originally said were not affected, NHTSA said when it opened the investigation. Engine failure and fire problems with Hyundais and Kias have plagued the companies for more than five years, affecting the owners of more than 8 million vehicles.*

**102.**

*In June of 2018, NHTSA opened two more investigations of the automakers that have yet to be resolved.  The agency said it had owner complaints of more than 3,100 fires, 103 injuries and one death.  It granted a petition seeking the probes filed by the nonprofit Center for Auto Safety, a consumer advocacy group.  Jason Levine, executive director of the center, said they petitioned NHTSA seeking an investigation because no one seemed to be listening to complaints from Hyundai and Kia owners.*

*The new investigations, one for Hyundai and the other for Kia, covered non-crash fires in almost 3 million vehicles across the model lineups of the affiliated Korean automakers.*

*Data collected by the Center for Auto Safety show 31 U.S. fire and engine-related recalls from Hyundai and Kia since 2015. The recalls involve more than 20 models from the 2006 through 2021 model years totaling over 8.4 million vehicles.*

*In some cases, such as nearly 200,000 vehicles recalled in September for braking system electrical shorts, the automakers urged owners to park them outside because fires could start after the vehicles were turned off. There also were recalls for brake fluid leaks, fuel pump cracks, damaged catalytical converters and problems with fuel igniting prematurely in the cylinders, all of which could set engines ablaze. (**See Exhibit #8**)*

**WHEREFORE**, Plaintiff, Kimberly Michelle Pierce, as Personal Representative and next of kin to her father, THOMAS AVERY RAVEN, deceased, and as Personal Representative of the Estate of Thomas Avery Raven, prays that they have a trial on all issues and judgment against the Defendants as follows:

a. That summons issue and service of process be perfected upon Defendants, requiring Defendants to be and appear in this Court within the time required by law and to answer this Complaint.

46

b.  That Plaintiffs recovers special damages, including, but not limited to, the full value of past medical expenses in an amount to be proven at trial.

c.  That Plaintiffs recover general damages for mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury.

d.  That Plaintiffs recover punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury.

e.  That Plaintiffs be awarded their reasonable attorney's fees and litigation expenses and costs of this action.

f.  That Plaintiffs recover such other and further relief as is just and proper; and

g.  That all issues be tried before a jury.

This 15th day of June 2021.

**WILLIAMS & ASSOCIATES LAW FIRM, P.C.**

*/s/ Rita T. Williams*
Rita T. Williams
GA State Bar No. 763978
Ledia L. Regis
GA State Bar No. 750281
***Attorneys for Plaintiffs***

220 Church Street
Decatur, GA  30030
(404) 370-3783
(404) 370-0884 fax
Email:  rtwilliams@williamsandassoc.com

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE WITH L.R. 5.1</u>

This is to certify that I have this date served a copy of the within and foregoing *Plaintiffs' First Amended Complaint* with the Clerk of Court and upon all counsel of record using the CM/ECF system will automatically send email notification of such filing or via U.S. Mail to the following:

Myrece Rebecca Johnson
C. Bradford Marsh
**Swift Currie McGhee & Hiers, LLP**

Glenn Scott Bass
**Scrudder Bass Quillian Horlock**
**Taylor & Lazarus, LLP**

Collier West McKenzie
Robert Matthew Shoemaker
**Jones Cork, LLP**

This is to further certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1.  It is prepared in Times New Roman 14-point font.

This 15th day of June 2021.

**WILLIAMS & ASSOCIATES**
**LAW FIRM, P.C.**

*/s/ Rita T. Williams*
Rita T. Williams
GA State Bar No. 763978
Ledia L. Regis
GA State Bar No. 750281
***Attorneys for Plaintiffs***

48

220 Church Street
Decatur, GA  30030
(404) 370-3783
*Email: rtwilliams@williamsandassoc.com*